UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERMOGENESIS CORP., | No. 2:13-cv-02619-MCE-DAD |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| ORIGEN BIOMEDICAL, INC., | |
| Defendant. | |

On December 17, 2013, Plaintiff Thermogenesis Corp. ("Thermo") filed the instant action against Defendant OriGen Biomedical, Inc. ("OriGen") for allegedly infringing two of Thermo's patents. ECF No. 2. Presently before the Court is Thermo's Motion for Preliminary Injunction ("Motion"). ECF No. 29. OriGen timely opposed the Motion, ECF No. 45, and Thermo filed a timely Reply, ECF No. 52.[1] The Court held oral argument on September 4, 2014, and submitted the matter for a written decision.[2] For the following reasons, the Motion is DENIED.

///

///

---

[1] Thermo's request to file an oversized Reply, ECF No. 47, is GRANTED.

[2] At the September 4, 2014, hearing, the parties also argued OriGen's Motion to Dismiss in Part Thermo's First Amended Complaint, ECF No. 28. As with the instant Motion, the Court submitted that matter following argument. A written ruling on that motion will issue in a separate order.

1

# BACKGROUND[3]

## A. Factual Background

Thermo is a medical products company that designs, develops, manufactures, and sells automated and semi-automated devices and laboratory products for the medical market. Since the early 1990s, Thermo's inventions have included storage devices for storing blood at extremely low temperatures; these blood storage inventions helped enable the development of cell therapeutic technologies. In the early 1990s, Thermo partnered with the New York Blood Center ("NYBC"). Through this partnership, Thermo has ownership of or the right to enforce certain patents, including the two at issue in this case ("Asserted Patents").

The Asserted Patents include claims directed to improved-performance freezer bags and methods for the storage of blood and blood components at very low temperatures. The first, U.S. Patent No. 6,232,115 (the "'115 Patent"), was issued in 2001 and is entitled "Freezing and Thawing Bag, Mold, Apparatus and Method." It provides a bag for reliable cryogenic storage of blood and blood products. Thermo owns all right, title, and interest to the '115 Patent, including the right to sue for past, present, and future infringements. The second, U.S. Patent No. 6,491,678 (the "'678 Patent"), was issued in 2002 and is entitled "Freezer Bag." It provides a freezer bag that includes dosing compartment. Although the NYBC owns the '678 Patent, it has assigned all rights to enforce the patent against OriGen to Thermo, including the right to sue for past, present, and future infringement.

Thermo alleges that OriGen has made, used, sold, imported and/or offered for sale products and/or processes in the United States consisting of or including the CS-25 cryogenic freezer bag[4] that incorporates the inventions of the Asserted Patents

---

[3] These facts are taken, at times verbatim, from Thermo's First Amended Complaint and Motion for Preliminary Injunction, ECF Nos. 27, 29, unless otherwise noted.

[4] Although Thermo's filings imply that additional OriGen products infringe the Asserted Patents, see, e.g., ECF No. 27 at 5, it has presented no evidence of products aside from the CS-25.

2

("Accused Product"). Thermo alleges the Accused Product is a demonstrable copy of Thermo's patented product. Thermo claims that OriGen sells the Accused Product with the specific intent that customers use it for blood and/or blood product storage. According to Thermo, this is demonstrated by OriGen's statement on its website that its "CryoStore Freezing Bags are a safe, economical way to freeze blood components at any temperature and are ideally suited for cord blood and stem cell storage, cryogenic blood banking and cryopreservation of any blood component." OriGen has advertised the Accused Product through videos on its website, the websites of its distributors, or on YouTube.

According to Thermo, OriGen initially began making, using, selling, importing and/or offering for sale the Accused Product in or about 2007. Thermo claims at that time OriGen's management was advised and put on notice orally and in writing of the Asserted Patents and that OriGen's infringing activity must immediately cease. Thermo alleges, on information and belief, that OriGen did then cease all infringing activity related to the Asserted Patents.

Thermo alleges that OriGen has again undertaken infringing activity, including but not limited to OriGen's recommencement of manufacturing and selling the Accused Product in the United States, OriGen's offer for sale and/or its sale of the Accused Product to domestic and offshore customers, and OriGen's offering for sale and/or selling the Accused Product at trade shows in California and elsewhere in the United States. According to Thermo, this renewed infringing activity became overt in or about late 2013. Thermo claims it has demanded in writing that OriGen cease infringing activity, but OriGen, with full knowledge of the Asserted Patents, has failed to comply.

### B. Procedural Background

On December 17, 2013, Thermo filed its initial Complaint. See ECF No. 1. On January 2, 2013, OriGen was served; accordingly its Answer was due by January 23, 2014. See ECF No. 6. On the day the Answer was due, the parties stipulated to extending to February 28, 2014, the time for OriGen to respond to the Complaint. See

ECF No. 7.  On February 25, 2014, the parties stipulated to a further extension, this time to March 14, 2014.  See ECF No. 12.  In that stipulation, the parties represented they had arrived at an oral agreement in principal to resolve this matter in full.  See id.  On March 14, 2014, OriGen filed a Motion to Dismiss under Federal Rule of Civil Procedure[5] 12(b)(6).  See ECF No. 14.  On April 15, 2014, the Court granted the Motion to Dismiss because Thermo failed to timely file an opposition.  See ECF No. 26.  The same day, Thermo filed a First Amended Complaint.  See ECF No. 27.  On May 2, 2014, OriGen moved to dismiss in part the First Amended Complaint under Rule 12(b)(6).  See ECF No. 28.  On May 9, 2014, Thermo filed the instant Motion.  See ECF No. 29.

**STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citing Munaf v. Green, 533 U.S. 674, 689-90 (2008)).  Traditional equitable considerations apply to analysis of injunctions in patent cases. eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Thus, in order to obtain a preliminary injunction, a plaintiff must prove (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.  See Winter, 555 U.S. at 20.  There is no longer a presumption of irreparable harm even if a court finds patent infringement.  See Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011).  Although granting a preliminary injunction requires analysis of all four factors, a trial court may deny a motion based on a patentee's failure to show any one of the factors—especially either of the first two— without analyzing the others.  See Jack Guttman, Inc. v. Kopykake Enters., 302 F.3d 1352, 1356 (Fed. Cir. 2002).

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

4

Alternatively, under the so-called sliding scale approach, as long as a plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor.  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-1136 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

These two alternatives represent two points on a sliding scale, pursuant to which the required degree of irreparable harm increases or decreases in inverse correlation to the probability of success on the merits.  Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998); United States v. Nutri-cology, Inc., 982 F.2d 1374, 1376 (9th Cir. 1985).  Under either formulation of the test for granting a preliminary injunction, however, the moving party must demonstrate a significant threat of irreparable injury.  Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374 (9th Cir. 1985).

## ANALYIS

"Plaintiffs bear the burden of showing that, among other things, they are likely to suffer irreparable injury and the injury must be imminent in nature." Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).  "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."  Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985); see also Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1381 (Fed. Cir. 2005); Silber v. Barbara's Bakery, Inc., 950 F. Supp. 2d 432, 441 (E.D. N.Y. 2013) (noting that "[a]lthough delay may not preclude the grant of ultimate relief, it may preclude preliminary relief because it undermines the sense of urgency that typically accompanies a motion for preliminary injunction.").  As a result, "[a]

delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984).

The Court finds that Thermo's delay in seeking injunctive relief is fatal to the Motion. First, Thermo concedes it was aware of OriGen's allegedly infringing activity as early as 2007, Sivilotti Dec., ECF No. 29-3 ¶ 13, yet it did not file this action against OriGen until December 2013. Although Thermo alleges it put OriGen on notice of the Patents and infringing activity both orally, id., and in writing, ECF No. 27 ¶ 22, in 2007, it has failed to provide evidence to support its claims that OriGen was provided with written notice, that OriGen actually "ceased all detectable infringing activity" until 2013, or even that OriGen ever formally or informally agreed to cease making or selling its allegedly infringing product. Thermo suggests that if OriGen made or sold the Accused Product between 2007 and 20013, it did so surreptitiously, for instance, by marketing only overseas. Even if true, Thermo is not excused for failing to expeditiously protect its rights at the time it initially learned of the alleged infringement. The Court will not rescue Thermo from its choice not to secure much earlier a contractual agreement from OriGen or a judicial determination of its rights vis-à-vis OriGen's allegedly infringing product. Thermo's failure to seek relief as early as 2007 undercuts its claim of imminent, irreparable harm.

Second, even after Thermo allegedly learned in summer 2013[6] that OriGen was marketing the allegedly infringing product to Thermo's customers as a cheaper alternative, Thermo did not file a Complaint until December 17, 2013, and even then the Complaint was not accompanied by a request for injunctive relief. This too undercuts Thermo's claim of imminent, irreparable harm.

Finally, even assuming that OriGen actually "ceased all detectable infringing activity" between late 2007 and summer 2013, Thermo did not file the instant Motion

---

[6] Although Thermo's filings indicate it learned of OriGen's renewed infringing activity in October 2013, ECF No. 29-3 ¶ 18, at oral argument, Thermo's counsel indicated that Thermo detected renewed infringing activity earlier.

until May 9, 2014—at least 7 months after learning of OriGen's allegedly renewed infringing activity and almost 5 months after filing the initial Complaint in this case. Even assuming that some portion of the latter period is attributable to settlement negotiations, the Court finds that Thermo's substantial delay in seeking injunctive relief implies a lack of urgency and irreparable harm. Accordingly, Thermo has not met its burden of demonstrating irreparable harm.

## CONCLUSION

For the foregoing reasons, Thermo's Request to File an Oversized Reply, ECF No. 47, is GRANTED and Thermo's Motion for Preliminary Injunction, ECF No. 29, is DENIED.

IT IS SO ORDERED.

Dated: September 29, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT